**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

TORK RODGERS,                                    )
                                                 )
                    Plaintiff,                   )
                                                 )
          v.                                     )          No. 4:22-cv-00184-SPM
                                                 )
SLMPD ARRESTING OFFICERS, et al.,                )
                                                 )
                    Defendants.                  )

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Tork Rodgers for leave to

commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having

reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1).

Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice.

*See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma

pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To

state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief,

which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

Determining whether a complaint states a plausible claim for relief is a context-specific task that

requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The

court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Background

Plaintiff is a self-represented litigant who is currently on GPS monitoring and awaiting trial on state criminal charges. On August 26, 2018, the State of Missouri filed a complaint accusing him of unlawful use of a weapon, armed criminal action, and unlawful possession of a firearm. *State of Missouri v. Rodgers*, No. 1822-CR02960 (22nd Jud. Cir., City of St. Louis).[1] The charges

---

[1]The Court has reviewed plaintiff's state criminal case on Case.net, Missouri's online case management system, and will take judicial notice of this public record. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

stemmed from an August 6, 2018 incident in which plaintiff allegedly discharged a firearm at a motor vehicle.

On October 25, 2018, plaintiff was indicted by a grand jury. *State of Missouri v. Rodgers*, No. 1822-CR02960-01 (22nd Jud. Cir., City of St. Louis). Initially, he was ordered held without bond. Despite being appointed an assistant public defender, plaintiff filed numerous pro se motions with the circuit court, seeking – among other things – a reduction in his bond, the dismissal of his attorney, and the dismissal of his case for the violation of his right to a speedy trial. On February 6, 2020, the circuit court denied plaintiff's motion to proceed pro se and his motion to dismiss for violation of his speedy trial right. However, the circuit court changed his bond to personal recognizance, with the condition that he report to EMASS for GPS monitoring. Plaintiff was ordered released from custody on that date.

Since being released on electronic monitoring, there have been numerous counsel status hearings. During this time, plaintiff periodically received permission to travel out-of-state. At some point, his GPS monitoring switched from EMASS to Total Court Services. Plaintiff's case is still pending, with a status hearing scheduled for May 20, 2022.

On February 11, 2022, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983. (Docket No. 1). The complaint was typewritten on a Court-provided form, and named the following defendants: SLMPD Arresting Officers; EMASS; Total Court Solutions; the Judges of the 22nd Division; Prosecutors; and the Public Defender's Office. Plaintiff did not indicate the capacity in which defendants were sued. The complaint alleged violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments stemming from plaintiff's 2018 arrest. (Docket No. 1 at 3).

In the "Statement of Claim," plaintiff asserted that his due process rights had been violated from August 25, 2018 to the present day. (Docket No. 1 at 5). More particularly, he alleged that

he was illegally searched and seized in violation of the Fourth Amendment; that an ankle monitor was placed on him "past [his] discharge date"; that he was not given his *Miranda* rights, in violation of the Fifth Amendment; that he was denied his Sixth Amendment right to effective assistance of counsel; and that the Fourteenth Amendment was violated when his case was not discharged on August 11, 2019.

Based on these allegations, plaintiff sought discharge of his case, $2 million in damages, and an Impala car.

On April 28, 2022, plaintiff filed a document that was construed as an amended complaint. (Docket No. 4). An amended complaint supercedes an original complaint, and renders the original without legal effect. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). Therefore, the Court will treat the amended complaint as the operative pleading.

## The Amended Complaint

Plaintiff's amended complaint is typewritten and not on a Court-provided form. It is brought pursuant to 42 U.S.C. § 1983, and names twenty-two separate defendants in the caption, including: (1) Officer Wolfe; (2) Officer Anderson; (3) Officer Hawkins; (4) "3 Ofc Illegal Seizure at Wanted"; (5) Officer Driving Van; (6) "Judges [Who] Set Bail"; (7) "Judge [Who] Denied Bond"; (8) Judge Hogan; (9) Judge Millikan; (10) Judge Whyte; (11) Prosecutor Kim Gardner; (12) Prosecutor Stroescu; (13) "Atty at Release Feb. 2020"; (14) Prosecutor Alexander Polta; (15) Public Defender Mary Fox; (16) Public Defender Matthew Mahaffey; (17) Public Defender Anthony Davidson; (18) Public Defender Kevin McCoy; (19) Public Defender Legomsky; (20) St. Louis City; (21) EMASS; and (22) Total Court Services.[2] (Docket No. 4 at 1). Plaintiff does not

---

[2] Later in the amended complaint, he also identifies Judge Botchway as a defendant, though he is not named in the caption.

indicate the capacity in which defendants are sued. As in the original complaint, the amended complaint contains allegations regarding plaintiff's 2018 arrest and subsequent detention.

The amended complaint is twenty-four pages long, and is broken into several different sections. Within these sections, plaintiff intermingles factual allegations with legal conclusions and legal arguments. To better understand the amended complaint, the Court will go through it section-by-section, as plaintiff has presented it.

**A. "Summary" Section**

In the "Summary" section of his amended complaint, plaintiff asserts that he "was detained by police" on August 25, 2018, based on "a wanted placed by" St. Louis Metropolitan Police Officer Wolfe. He states that the "wanted" was "against documented police facts and based on unfounded suspicion," and that a "false affidavit was filed after he was arrested," constituting an "illegal seizure" in violation of the Fourteenth Amendment.

Following his arrest, plaintiff "was taken to the police station on" North Jefferson, where he was allegedly "threatened" by Detective Hawkins and Detective Anderson. He also claims that he was "denied an attorney" and not read his *Miranda* rights, in violation of the Fifth and Sixth Amendments. (Docket No. 4 at 1-2).

In addition, plaintiff contends that his right to effective assistance of counsel, his right to trial, his right to represent himself, and his right to a speedy trial have all been violated. (Docket No. 4 at 2). He also states that he has been "denied bond many times for no reason," resulting in pretrial incarceration for 537 days. This has been followed by ankle monitoring since February 6, 2020, resulting in "travel restrictions that are in place right now keeping [him] away from his family and work." Plaintiff closes his "Summary" by asserting that "[t]here is a class of one and *Monell* pattern for each component of the overdue due process," and that the governmental

agencies who placed him on electronic monitoring after August 11, 2019 "are liable for violating [his] rights."

**B. "Cause of Action/Allegations of Fact" Section**

In the section in his amended complaint titled "Cause of Action/Allegations of Fact," plaintiff recites the statutory language of 42 U.S.C. § 1983, presents the elements of a § 1983 claim, notes that an "official capacity claim represents nothing more than a suit against the Federal, state or local government entity itself," and concludes by alleging "a causal connection between the actions of the defendants and the harm that has resulted in the over 3 years of false arrest[,] imprisonment and detainment [under] 1822-CR02960-01." (Docket No. 4 at 2-4).

**C. "Parties" Section**

In the "Parties" section of the amended complaint, plaintiff identifies the defendants involved, and presents truncated allegations against them. (Docket No. 4 at 4).

First, with regard to the "police," plaintiff broadly alleges that Officer Wolfe "made a wanted false [affidavit]," and that because plaintiff had "no prior record," it was based on "false suspicion" and "bias." He also accuses Officer Hawkins of making a "false" affidavit, illegally seizing him, and not reading him his *Miranda* rights. Plaintiff asserts that the falsity of the affidavit was proven on August 12, due to the "victim/witness making [a] false claim of [plaintiff] driving near [the victim's] house," and because the affidavit was "drawn up after [his] arrest."

Second, as to the "judges," plaintiff simply lists the names "Hogan, Millikan, Whyte, Botchway, [and] judge [at] June 19 bond hearing," and then provides a series of fragmentary statements as to constitutional violations. For example, plaintiff asserts that under the "5th Amendment [he] wasn't read [his] rights[,] so [he] should not have been in jail at all, [making his] detention illegal." In similar fashion, he complains about procedural due process, the lack of

6

depositions, his inability to cross examine witnesses, his inability to proceed pro se, and the use of an ankle monitor after August 11, 2019, which he describes as the "term limit." Because more than one judge is involved, plaintiff states there is a "pattern" under *Monell*.

Third, regarding the "prosecutors," plaintiff names Gardner, Stroescu, and Polta, and also notes there was "no prosecutor for a time." (Docket No. 4 at 5). He refers to "no deposition statute," an illegal seizure under the Fourth Amendment, a failure to Mirandize under the Fifth Amendment, lack of procedural due process, a deprivation of his liberty under the Fourteenth Amendment, and a "*Monell* pattern…class of one," because he has not been given a "trial date[,] yet [prosecutors are] trying [an unrelated] 2020 bar shooting case [in] 2022."

Fourth, with respect to the "public defenders," plaintiff lists the names of Fox, Mahaffey, Davidson, McCoy, and Legomsky, then accuses them jointly of "never [putting] in one motion," denying him the ability to proceed pro se, requesting a test that had been done in a previous incarceration, and allowing him to be on an "ankle monitor after" August 11, 2019. Plaintiff asserts that he has a *Monell* claim because there is "more than one public defender[,] so a pattern."

Fifth, regarding the "2 companies" he has sued, EMASS and Total Court solutions, plaintiff asserts a "*Monell* pattern."

Finally, as to St. Louis City, plaintiff states that he is the "last [one] with [an] ankle monitor from 2018," and that this violates his Fourth, Fifth, and Fourteenth Amendment rights.

### D.  "Immunity Arguments" Section

In the section titled "Immunity Arguments[:] Absolute and Qualified Immunity," plaintiff lays out un-cited case law regarding the application of immunity to this action. (Docket No. 4 at 6). He begins by asserting that "immunity is not to protect individuals but to protect functions."

Plaintiff goes on to discuss the "two-part test for qualified immunity" and to note the distinction between qualified and absolute immunity. (Docket No. 4 at 6-7).

Though he acknowledges that immunity may protect defendants, plaintiff nevertheless contends that "it is unreasonable to violate…clearly established constitution[al] law," which is what defendants purportedly did. (Docket No. 4 at 7-8). Regarding the judges in particular, plaintiff argues that they acted in the "clear absence of jurisdiction" after August 11, 2019, which is the date he calculates as the deadline for his case to be tried. (Docket No. 4 at 8). As to the prosecutors, he observes that they do not have absolute immunity for administrative acts. (Docket No. 4 at 9).

Plaintiff closes this section by stating that "absolute power corrupts absolutely," that it is better to let the "guilty go than hold [the] innocent," and that the "cause of an injury need not be simultaneous with the injury," using as an example a "copper water pipe" that was "installed years ago" but floods a home.

### E. "Due Process 5th & 14th" Section

In the section titled "Due Process 5th & 14th," plaintiff begins by setting out the difference between substantive and procedural due process. He then states that his state criminal case has deprived him of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the constitution. By way of support, plaintiff asserts that there have been "constant continuances" in his criminal case from September 2018 to February 2022, amounting to the "arbitrary treatment of judicial duties by counsel status hearing continuances for over 3 years." (Docket No. 4 at 10). He states that "the shield of absolute immunity is melted and shattered by the judiciary and government agents not doing judicial functions in this case," and that "over" four judges and four prosecutors have been involved in his case.

Plaintiff claims that his speedy trial deadline was May 14, 2019, and that the "terms" expired on August 11, 2019. (Docket No. 4 at 11). Both these deadlines have been "ignored" by "capricious court officials." Plaintiff further states that he "passed" the "pro se representation and competent for trial test," but has still been denied his rights. He also argues that his "right to bond hearings was violated and an ankle monitor placed on [him] upon release when [he] was clearly out of [the court's] jurisdiction."

Plaintiff closes the section by asserting that he "was given no lawyer" and was not given his *Miranda* rights, violating the Fifth Amendment. The Court notes that plaintiff apparently means he did not have a lawyer at the time he was arrested, as plaintiff is clearly represented by counsel now, and has – in point of fact – complained that he has been unable to proceed without counsel in his criminal case.

## F.  "Actors Acting Under Color of Law" Section

In the section of his amended complaint titled "Actors Acting Under Color of Law & the Rights of the US Constitution Deprived," plaintiff attempts to connect defendants with factual allegations demonstrating the violation of his rights.

### i.      Allegations Against St. Louis City Metropolitan Police Officer Defendants

With regard to the police officer defendants, plaintiff asserts deprivations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. He alleges that Officer Wolfe "made a wanted false [affidavit]," even though plaintiff had "no prior record." Plaintiff states that this demonstrates that Wolfe had "false suspicion" and exhibited "bias." He next accuses Detective Anderson of failing to read him his rights, undertaking a search without a warrant, and falsely arresting him. Likewise, plaintiff claims that Detective Hawkins failed to read plaintiff his *Miranda* rights, falsely arrested him, and authored a probable cause statement after his arrest.

Based on the "false suspicion" of Officer Wolfe, which derived from a "false report by [a] false accuser," plaintiff was detained by "three officers" and taken to the police station. (Docket No. 4 at 12). Plaintiff insists that this represents an illegal arrest. Once at the station, plaintiff states that he requested an attorney, but was questioned without an attorney being present, and without being given his *Miranda* rights. Nevertheless, he admits that he "did not answer any questions." Despite not answering any questions, plaintiff contends that his Fifth and Sixth Amendment rights were violated.

Plaintiff acknowledges that in order to succeed on his claim of false arrest, he "must prove [the] absence of probable cause by information contained in the affidavit that the affiant either (1) knew was false or (2) would have known was false had he not recklessly disregarded the truth." To that end, he asserts that he was born in St. Louis and had no criminal record, that "[e]xaggerated and fabricated testimony [was] evident from [the] police report," and that the police report does not match the probable cause statement "at all." (Docket No. 4 at 12-13). Because they differ, plaintiff contends that "there is only suspicion[,] not any facts." (Docket No. 4 at 13).

In particular, plaintiff alleges that "the search warrant is not specific" because it had the "wrong color car." Furthermore, he claims that whoever signed it was "coerced into signing it," demonstrating that the "person was fabricating [the] story."

Plaintiff then engages in a comparison between three different documents, one written on August 6, the other on August 12, and a third on August 26.

According to plaintiff, the August 26 document – which is a probable cause statement – advises that plaintiff drove around the victim's block on "several occasions prior to" August 6. The August 12 police report, however, allegedly "shows [that] false accuser C. Walker lied about seeing [plaintiff's] vehicle." Plaintiff continues by stating that the August 26 probable cause

10

statement says the victim "ran to a window after [he] heard gunshots," but that the August 6 statement says the victim "exited [the] residence after [he] heard gunshots." The August 26 statement describes the victim observing plaintiff firing at victim's "vehicle and home," but the August 6 statement purportedly has the victim stating that he "heard shots and saw [a] grey 2000s [model] Chevy Impala…driving away." Plaintiff also claims that the August 6 statement references a "green" Impala, and that it "sounds on drugs."

Continuing in this manner, plaintiff asserts that the victim is on "child support and is AWOL from [the] military," which should have given "any reasonable officer…serious doubts." (Docket No. 4 at 15). He further notes that – at the time of the shooting – it was "dark outside," making the warrant "[perjurious] and reckless."

Plaintiff also notes that he was arrested on August 25, 2018, but that the probable cause affidavit submitted to the court was made on August 26, 2018, the day after. He claims this shows the falsity of the affidavit, dissolves "the shield of qualified immunity," and demonstrates that the "affiant had to know [the] 3rd party was lying." Despite this, "the affiant proceeded with disregard for the truth." In short, plaintiff contends there was "easily available exculpatory information" and that "the police report and common sense" would have shown an absence of probable cause to arrest him. (Docket No. 4 at 14).

Finally, regarding an unlawful search, plaintiff states only that his "car was illegally searched against [his] will."

ii.    **Allegations Against Judges**

Plaintiff asserts that Judges Hogan, Millikan, Whyte, and Botchway all violated his constitutional rights. (Docket No. 4 at 15). He starts by alleging that because he was not "read [his] rights" he "should not have been in jail at all," making his "detention illegal." (Docket No. 4 at

16). Plaintiff next repeats his earlier assertion that his speedy trial deadline was May 14, 2019, and that the court term ended on August 11, 2019. He also broadly alleges that his right to cross examine witnesses has been violated, that he has not had depositions, that he has not been allowed to represent himself, that the judges are racist, and that being on an ankle monitor after the August 11, 2019 "term limit" has deprived him of his liberty. Because there is more than one judge involved, plaintiff asserts that there is a "pattern" under *Monell*.

In reference to judicial immunity, plaintiff contends that "immunity only extends so far," and is based on the "nature of [the] functions performed[,] not the identity of the actor." Plaintiff accuses the judges of failing "to make decisions as needed" and of failing to act "at all in" his case. According to plaintiff, this means that the shield of immunity should be lost. He also suggests that after August 11, 2019, "the case was out of [the] court[']s jurisdictional power," and that the court "no longer had any jurisdiction after the end of the 3rd term."

To support his argument, plaintiff sets out four factors regarding judicial immunity, and presents case law from the Supreme Court, the Fifth Circuit Court of Appeals, and the State of Texas. (Docket No. 4 at 16-17). He states that the judges are "not doing their judicial duties" and that their acts do not constitute the "normal performance for a judge." (Docket No. 4 at 17). Plaintiff repeats his contention that he "was out of the judges['] jurisdiction" as of August 11, 2019. From August 12, 2019 until February 6, 2020, he states that he was kept wrongfully detained, violating the Fourth Amendment. Plaintiff asserts that a trial was supposed to be set on March 6, 2020, but that has not occurred, and that he was assigned a different judge. He argues that he has been denied a trial or discharge, and that despite being out of jail on an ankle monitor, he is still restricted from traveling to visit his family and "to see his business partners." (Docket No. 4 at 17-18).

12

In short, plaintiff states that the judges are "not performing judicial acts." (Docket No. 4 at 18). That is, the judges have not tried his case or discharged it. As such, plaintiff concludes that judicial immunity does not apply.

### iii.    Allegations Against Prosecutors

Plaintiff states that Prosecutors Gardner, Stroescu, Polta, and the prosecutor at his bond hearing have all violated his constitutional rights. (Docket No. 4 at 19). To support these claims, he vaguely alleges "no deposition statute," repeats his earlier allegations regarding an "illegal seizure" and the lack of *Miranda* warnings, and refers to "procedural due process" and "ankle monitor liberty deprivation" under the Fifth and Fourteenth Amendments.

As he did with the judges, plaintiff remarks upon the issue of immunity, acknowledging that prosecutors are generally immune from suit for their work on criminal cases. However, plaintiff suggests that the Supreme Court has ruled that "immunity does not protect arbitrary and [capricious]" acts, and that these defendants are not entitled to immunity because "probable cause was never established due to [the] false affidavit." (Docket No. 4 at 19-20).

Plaintiff further notes that "[t]here have been 3 prosecutors and the State[']s Attorney" involved in his case, but that they have not brought him to trial in over three-and-a-half years, ignoring state law.[3] (Docket No. 4 at 20). While observing that it is "almost impossible to sue

---

[3] In particular, plaintiff refers to RSMo § 545.890, which provides: "If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner, or shall be occasioned by the want of time to try the cause at such second term." Additionally, RSMo § 545.900 provides: "If any person indicted for any offense, and held to answer on bail, shall not be brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to such offense, unless the delay happened on his application, or be occasioned by the want of time to try such cause at such third term." The Court notes that plaintiff has not alleged that he has not caused the delay himself through the filing of motions, or that there has been sufficient time to try him.

[prosecutors] based on misconduct," he argues that these defendants are liable for undertaking "no conduct" at all.

### iv.    Allegations Against Public Defenders

Plaintiff contends that Public Defender Mahaffey denied him "pro se" status and that his performance "indicates [a] pattern," that Davidson provided ineffective assistance of counsel, referred him for a psychological evaluation "right before speedy trial," and denied him pro se status, that McCoy provided ineffective assistance of counsel and "never put any motions" before the court, and that Legomsky provided ineffective assistance of counsel and denied him pro se status.

By way of factual allegations, plaintiff explains that Public Defender Davidson "ordered" him "to have a psychological evaluation for no reason." This occurred on May 7, 2019, right before the May 14, 2019 "speedy trial deadline." Plaintiff further accuses Davidson of failing to ask for a dismissal based on a violation of his right to a speedy trial.

Because more than one public defender is involved, plaintiff claims that there is a "pattern" under *Monell*.

### v.    Allegations Against EMASS and Total Court Solutions

Plaintiff asserts that both EMASS and Total Court Solutions are operating under governmental authority, and therefore acting under color of state law. (Docket No. 4 at 21). Specifically, he contends that these two companies provided ankle monitoring services after August 11, 2019, and that this violated the Fourth and Fourteenth Amendments. Furthermore, because two companies are involved, plaintiff insists there is a "*Monell* pattern."

vi.   **Allegations Against St. Louis City**

Plaintiff accuses St. Louis City of an abuse of power, lack of "due process protections," and "unreasonable seizure with ankle monitor." His allegations against the city appear to encompass two different claims.

First, plaintiff states that there is a "pattern and policy" of not "having trials," and they have not met even a low "level of productivity."

Second, plaintiff alleges that his "rights were violated by the City of St. Louis as…their employees…endorsed the illegal ankle monitor by paying for them with 2 different companies even after being informed they were breaking the laws of the state." (Docket No. 4 at 21-22). Plaintiff insists that no one else has worn an ankle monitor as long as him, that no one else has had a case held so long, and that this represents a "*Monell* pattern and class of one." (Docket No. 4 at 22). In other words, he feels he has been "singled out for irrational or differential treatment." Plaintiff asserts that the "city was written [and] called about it," and that celebrities protested "ankle monitors around the time by wearing them."

vii.   **Allegations Involving Automobile**

Plaintiff concludes this section of the amended complaint by stating that there is a causal connection between his arrest and the loss of his car. (Docket No. 4 at 23). That is, plaintiff states that in October 2019, "way after" he "was falsely arrested, his Impala "was towed." He vaguely attributes this towing to the "illicit customs of this city."

G.   **"Claims For Relief" Section**

Based on the above, plaintiff seeks $20 million in damages, $2 million in punitive damages, and an Impala car. (Docket No. 4 at 24). He also seeks injunctive relief in the form of immediate discharge of his criminal case.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing numerous defendants of various constitutional violations stemming from his arrest and prosecution in state court. Because he is proceeding in forma pauperis, the Court has reviewed his amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  St. Louis City

Plaintiff has named St. Louis City as a defendant. A local governing body such as St. Louis can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Louis.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is

16

asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

    1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

    2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

    3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging

17

a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented facts supporting the proposition that St. Louis City harmed him due to an unconstitutional policy, custom, or failure to train.

### i.    Policy

Regarding policy, plaintiff asserts that St. Louis City has a policy of not having jury trials, and of endorsing "illegal ankle monitor[s] by paying for them." These conclusory allegations do not demonstrate the existence of an unconstitutional policy on the part of St. Louis. That is, none of plaintiff's facts point to any city "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body" relating to trials or ankle monitors. In other words, there is nothing to support the contention that St. Louis has made an official decision to not allow jury trials or to illegally place people on electronic monitoring. Certainly, he has not alleged that he was denied a trial or placed on an ankle monitor due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

The Court notes that plaintiff's own facts show that the setting of his trial and his placement on an ankle monitor are actions attributable to the state circuit court judge presiding over his case. There is nothing to connect the actions of the state circuit court to any policy on the part of St.

Louis City. Therefore, plaintiff has not sufficiently alleged that St. Louis is liable to him for having an unconstitutional policy.

### ii.    Custom

As to custom, plaintiff has not presented facts showing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis City employees, much less that city policymaking officials tacitly authorized or were deliberately indifferent to such misconduct. Throughout the amended complaint, plaintiff insists on the presence of a "pattern" due to the fact that he has named multiple defendants. However, plaintiff has not factually demonstrated a single constitutional violation among the defendants who are St. Louis City employees, or shown that such employees are responsible for his inability to receive a trial, or for placing him on an ankle monitor. Because he has not shown a single such violation, he has clearly failed to establish a widespread pattern. Therefore, plaintiff has not sufficiently alleged that St. Louis is liable to him for having an unconstitutional custom.

### iii.    Failure to Train

With regard to a failure to train, plaintiff has not demonstrated that St. Louis City was deliberately indifferent. That is, he has not shown that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Such notice is typically provided by alleging a "pattern of similar constitutional violations by untrained employees." As noted above, plaintiff has not established that his own constitutional rights were violated, let alone the existence of a pattern of similar constitutional violations. In other words, even assuming that St. Louis was responsible for his trial and ankle monitoring, and that these represented constitutional violations by untrained employees, he has not sufficiently shown that this has happened to others, thereby representing a pattern sufficient to put the city on notice. Therefore,

plaintiff has not sufficiently alleged that St. Louis is liable to him for failing to train or supervise its employees.

### iv.    Respondeat Superior

To the extent that plaintiff seeks to hold St. Louis City liable for the actions of its employees, the Court notes that the city cannot be liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality…cannot be liable on a respondeat superior theory").

### v.    Dismissal of Claim

As discussed above, plaintiff has failed to demonstrate that St. Louis City violated his constitutional rights due to a policy, custom, or failure to train. Therefore, the claim against the city must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### B.  EMASS and Total Court Solutions

Plaintiff has named EMASS and Total Court Solutions as defendants. Both are private companies that provide electronic monitoring services for the circuit court. As such, plaintiff contends that they are acting under color of state law.

To support a 42 U.S.C. § 1983 claim against a private corporation acting under color of state law, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who

represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

In this case, plaintiff makes no effort to demonstrate that either EMASS or Total Court Solutions inflicted an injury on him due to a policy, custom, or official action. To the contrary, he premises these claims on his legal conclusion that the circuit court wrongly ordered him to wear an ankle monitor, and that EMASS and Total Court Solutions are therefore liable for carrying out the order. In other words, the allegedly unconstitutional act is the court order, and not anything attributable to these two defendants. For example, there is no indication anywhere in the amended complaint that either EMASS or Total Court Solutions carried out the court-ordered monitoring in a way that violated the constitution. Therefore, the claims against EMASS and Total Court Solutions must be dismissed.

**C. Public Defenders**

Plaintiff has named five different public defenders as defendants: Mary Fox; Matthew Mahaffey; Anthony Davidson; Kevin McCoy; and Unknown Legomsky. None are state actors or acted under color of law for purposes of 42 U.S.C. § 1983.

"The essential elements of a [42 U.S.C.] § 1983 claim are (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). However, a defense attorney, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation of constitutional rights under 42 U.S.C. §

21

1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990) (stating that the Eighth Circuit "has repeatedly held that both retained and appointed attorneys are not liable for deprivations of constitutional rights under 42 U.S.C. § 1983 for the reason that they do not act under color of state law"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel").

In this case, plaintiff accuses his public defenders of various types of ineffective assistance of counsel, such as failing to file motions and referring him for an evaluation he did not want. These actions were taken in performance of the traditional functions of defense counsel. As noted above, however, public defenders do not act under color of state law for 42 U.S.C. § 1983 purposes when performing these functions. Because these defendants did not act under color of state law, plaintiff is missing an essential element of a § 1983 claim against them. Therefore, the claims against public defenders Fox, Mahaffey, Davidson, McCoy, and Legomsky must be dismissed.

**D.  Official Capacity Claims**

At no point in either his original or amended complaint does plaintiff expressly indicate the capacity in which defendants are sued. A plaintiff can bring a 42 U.S.C. § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official

capacity claims. *Id. See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); and *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity").

In this case, because plaintiff has failed to specifically indicate the capacity in which defendants are sued, they are presumed to be sued in their official capacities only. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In his amended complaint, plaintiff has named defendants who appear to be employed by both St. Louis City and the State of Missouri. For the St. Louis employees, the official capacity claims against them are actually claims against the city itself. Likewise, for State of Missouri employees, the official capacity claims are treated as being made against the state.

### i.     Official Capacity Claims Against the St. Louis City Employees

As discussed above, a municipality such as St. Louis City can be sued directly under 42 U.S.C. § 1983. *See Monell*, 436 U.S. at 690. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *See Mick*, 883 F.3d at 1079.

The Court has already discussed plaintiff's failure to demonstrate that St. Louis City has violated his constitutional rights with regard to either his ankle monitoring or his ability to have a criminal trial. To the extent that he is alleging that his rights were violated due to his arrest by St. Louis police officers, he has not shown that this occurred due to an unconstitutional policy, custom, or failure to train.

With regard to policy, plaintiff does not allege that he was arrested due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *See Corwin*, 829 F.3d at 700. *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). Instead, plaintiff's facts – such as they are – focus on the actions of individual officers, and do not implicate any city policy statement, ordinance, regulation, or official decision from the city's governing body. Additionally, the Court notes that it cannot infer the existence of a policy from a single occurrence, which is what is presented here. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

As to an unconstitutional custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis City employees. *See Johnson*, 725 F.3d at 828. That is, he has not properly alleged that others have

been illegally arrested in the same manner as plaintiff, thereby asserting a pattern sufficient to establish the tacit authorization or deliberate indifference of policymaking officials. Rather than describe a pattern, plaintiff only presents facts in reference to his own arrest. The Court cannot infer a pattern from one incident. *See Wedemeier*, 931 F.2d at 26.

Similarly, plaintiff has not demonstrated that St. Louis City policymaking officials were deliberately indifferent in failing to train or supervise its employees. To establish deliberate indifference, he must show that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings*, 397 F.3d at 1122. Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M.*, 874 F.3d at 585. However, plaintiff has not asserted a pattern regarding arrests, but focuses on his own. This is not sufficient to demonstrate the "pattern" required to put St. Louis on notice.

Finally, to the extent that plaintiff seeks to hold St. Louis City liable for the actions of its police officers, the Court once again notes that respondeat superior is not available in a 42 U.S.C. § 1983 action. *See A.H.*, 891 F.3d at 728 ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has not demonstrated the liability of St. Louis City. Therefore, the official capacity claims against the St. Louis employees must be dismissed.

### ii.  Official Capacity Claims Against the State Employees

With regard to plaintiff's claims for money damages, his official capacity claims against the State of Missouri employees fails for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See*

25

*also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").

In this case, to the extent plaintiff is seeking monetary damages from state officials in their official capacities, the State of Missouri is not a 42 U.S.C. § 1983 "person." Because he is missing an essential element of a § 1983 claim, the claim must be dismissed.

Second, plaintiff's claim for money damages is barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Sovereign immunity also protects persons acting in their official capacities from monetary claims. *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

26

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In short, plaintiff's claims for money damages against state officials acting in their official capacities are barred by sovereign immunity. Furthermore, there is no indication that any exception to sovereign immunity exists in this case.

To the extent that plaintiff seeks the discharge of his criminal case, the Court notes that such relief is not available under 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"); *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (explaining that Supreme Court "has held that a prisoner in state custody cannot use a [42 U.S.C.] § 1983 action to challenge the fact or duration of his confinement"); *Adams v. Agniel*, 405 F.3d 643, 644-45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release); and *Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993) (stating that when "a prisoner directly attacks the validity of his sentence, the proper vehicle is a habeas corpus action"). If plaintiff wants to challenge his criminal case and seek dismissal for any reason, he is required to do that through a petition for writ of habeas corpus.

To the extent plaintiff seeks any other kind of injunctive relief, the Court notes that he has not alleged any facts attributing an unconstitutional policy, custom, or failure to train to the State of Missouri.

For all these reasons, plaintiff has failed to state official capacity claims against the State of Missouri employees. Therefore, such claims must be dismissed.

**E.  Individual Capacity Claims**

As noted above, plaintiff has failed to expressly indicate the capacity in which he is suing defendants. Because he has not specifically sued defendants in their individual capacities, the Court must treat the claims as occurring in their official capacities only. However, even assuming

that plaintiff sued defendants in their individual capacities, he has still failed to state a claim against them.

### i. St. Louis City Metropolitan Police Officers

Plaintiff has named three St. Louis City police officers as defendants: Officer Wolfe; Officer Hawkins; and Officer Anderson. He also makes reference to three unidentified officers who detained him, as well as an unidentified officer "driving [the] van." Liberally construing the amended complaint, it appears that plaintiff is making three separate claims against these defendants: (1) false arrest; (2) illegal search; and (3) a failure to provide him with his *Miranda* rights.

### a. False Arrest

Plaintiff accuses the law enforcement defendants of falsely arresting him. "Under the Fourth Amendment, a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson, Mo.*, 897 F.3d 916, 920 (8ᵗʰ Cir. 2018). "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8ᵗʰ Cir. 2013). However, a false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8ᵗʰ Cir. 2001).

Probable cause exists where there are facts and circumstances within a law enforcement officer's knowledge that are sufficient to lead a person of reasonable caution to believe that a suspect has committed or is committing a crime. *Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8ᵗʰ Cir. 2012). *See also Borgman v. Kedley*, 646 F.3d 518, 523 (8ᵗʰ Cir. 2011) ("An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest

are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense"). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010).

Probable cause can still exist even when an officer mistakenly arrests a suspect, as long as the mistake is objectively reasonable. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Similarly, the fact that a suspect arrested by law enforcement is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976). Nonetheless, the substantial latitude given to law enforcement officers is "not without limits," and an officer "is not free to disregard plainly exculpatory evidence." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Furthermore, "probable cause does not exist when a minimal further investigation would have exonerated the suspect." *Id*.

In this case, plaintiff broadly alleges that probable cause did not exist for his arrest. However, there is nothing in the amended complaint to support this legal conclusion. Quite to the contrary, plaintiff's own allegations acknowledge that the victim in his criminal case observed plaintiff discharging a firearm and driving away. This is clearly sufficient to lead a person of reasonable caution to believe that a suspect has committed or is committing a crime.

Rather than dispute the existence of probable cause, plaintiff goes to great lengths to argue that the information officers had was unreliable, because of contradictory statements made in various reports. Aside from plaintiff's labels and conclusions, however, including the unsupported assertion that the victim was "not truthful," he has failed to demonstrate that the officers in this case acted unreasonably. Indeed, the only real contradiction he has pointed out is the discrepancy in the color of the Impala involved in the shooting, which he claims has been described as both "grey" and "green." This does not contradict the more salient points regarding the victim's identification of plaintiff as the shooter, and the fact that an Impala was used. Certainly, this color

discrepancy does not adequately show that any of the officers involved disregarded "plainly exculpatory evidence."

### b.  Illegal Search

Plaintiff alleges that the law enforcement defendants illegally searched his vehicle, apparently pursuant to a deficient warrant. "Under the Fourth Amendment, a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson, Mo.*, 897 F.3d 916, 920 (8th Cir. 2018). The warrant itself shields the officer who is executing it, "unless a reasonably well-trained officer would have known that the arrest was illegal despite the magistrate's authorization." *See Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994). That is, when an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

Nevertheless, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id*. at 547. To the contrary, the Supreme Court has recognized an exception that allows "suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Wheeler v. City of Searcy, Arkansas*, 14 F.4th 843, 852 (8th Cir. 2021).

One of the situations in which an officer will have no reasonable grounds for believing a warrant was properly issued "occurs when the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge." *Id*. Thus, a Fourth Amendment violation occurs when a law enforcement officer's "probable cause statement contained a deliberate falsehood or he acted with reckless disregard for the truth when he prepared it." *See Murray v.*

*Lene*, 595 F.3d 868, 872 (8th Cir. 2010). "Omissions can likewise vitiate a warrant if" two things are proven. *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004). First, the aggrieved party must show "that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading." *Id*. Second, the aggrieved party must also prove "that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Id*.

In this case, plaintiff makes several references to an illegal search, without ever developing this claim with facts. As best the Court can tell, however, he is complaining that officers searched his vehicle and found some type of contraband. More specifically, plaintiff mentions a "car stop" in which his vehicle "was illegally searched against [his] will [as] denoted by [his] initials on the warrant." (Docket No. 4 at 14). He contends that this warrant was "not specific for [the] search [because it had the] wrong color car."

As noted above, the issuance of a search warrant generally shields the officer or officers conducting the search. There is an exception to this rule if the "affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge," or if facts were intentionally or recklessly omitted, making the affidavit misleading. Neither of these exceptions are indicated in the amended complaint.

To be sure, plaintiff makes several allusions to a "false" affidavit, but never provides any factual allegations or explanations as to what caused this falsity. Certainly, none of the defendants are directly alleged to have placed a deliberate falsehood into the search warrant affidavit, and none of them are alleged to have omitted information. Rather than point out a purported falsehood, plaintiff vaguely refers to a discrepancy in the color of the car to be searched. There is no indication, however, that this so-called discrepancy was manufactured by law enforcement, was

known by law enforcement to be false, or recklessly relied upon by law enforcement in disregard for the truth.

Plaintiff also fails to demonstrate how the color of the car alone made the warrant invalid, as he acknowledges being identified by the victim, acknowledges having a wanted placed on him due to that information, and admits to driving an Impala. Given these facts, the color discrepancy alone does not sufficiently allege that a well-trained officer or officers would have known their search was illegal. Relatedly, plaintiff has not established that without the information regarding the color of the car, the warrant was no longer supported by probable cause. *See United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (concluding that warrant was valid because affidavit established probable cause even without the erroneous information).

### c.   Failure to Read *Miranda* Rights

Plaintiff contends that his constitutional rights were violated when the law enforcement defendants failed to read him his *Miranda* warnings. Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), "certain warnings must be given before a suspect's statement made during custodial interrogation [can] be admitted into evidence." *Dickerson v. United States*, 530 U.S. 428, 431-32 (2000). The *Miranda* rule is a prophylactic measure that is employed to protect against the violation of the Self-Incrimination Clause. *See United States v. Patane*, 542 U.S. 630, 636 (2004) (plurality opinion). The rule's purpose is to prevent "the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003).

"Rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." *Id*. As such, law enforcement's failure to read the *Miranda*

33

warnings to a suspect does not violate the suspect's constitutional rights and cannot be grounds for a 42 U.S.C. § 1983 action. *Id*. *See also Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006) (agreeing "with the district court that a litigant cannot maintain an action under § 1983 based on a violation of the *Miranda* safeguards"); *Brock v. Logan County Sheriff's Dept. of Arkansas*, 3 F.3d 1215, 1217 (8th Cir. 1993) ("The remedy for the alleged *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a civil rights action"); and *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir. 1989) (explaining that "[t]he reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself," and that "the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action").

In short, a suspect's remedy for the violation of the *Miranda* rule is suppression of the evidence, not a damages action under 42 U.S.C. § 1983. *See Hannon*, 441 F.3d at 637.

Here, plaintiff makes repeated accusations regarding the failure of law enforcement to read him his *Miranda* rights, even though he acknowledges that he did not answer any questions, and therefore, has not demonstrated any harm. In any event, as discussed above, *Miranda* is designed to prevent "the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning," and is a rule to safeguard constitutional rights, not an extension of the right itself. Thus, any failure to read the *Miranda* warnings to plaintiff does not violate plaintiff's constitutional rights and cannot be grounds for a 42 U.S.C. § 1983 action.

### d.  Failure to Raise a Right to Relief Above the Speculative Level

Aside from plaintiff's failure to state a false arrest, illegal search, or *Miranda* claim, the Court notes that plaintiff's conclusory allegations simply fail to demonstrate a plausible claim for relief. As noted above, a plausible claim for relief is more than a "mere possibility of misconduct."

*See Ashcroft*, 556 U.S. at 679. That is, plaintiff's allegations must raise a right to relief above the speculative level. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). In reviewing plaintiff's amended complaint, the Court is required to accept the allegations contained in it as true and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). However, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

In this case, plaintiff's allegations come in the form of a series of fragmented, unsupported statements. For example, as to Officer Wolfe, plaintiff states: "False suspicion[,] no facts[,] wanted," and "Wolfe made a wanted false [affidavit], no prior record so false suspicion, bias." As to Officer Hawkins, he asserts: "Probable cause statement after arrest so no way facts for arrest," and that "Hawkins [made] false [affidavit], illegal seizure[,] wasn[']t read rights[,] 5th Amendment." None of these peremptory statements allows the Court to understand plaintiff's claim.

Rather than presenting facts as to what each of the named law enforcement defendants did or did not do to harm him, plaintiff relies entirely on labels, unsupported conclusions, legal conclusions, and the recitation of various causes of action. This type of pleading is insufficient to state a claim. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"); and *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

### e.   Dismissal of Claims Against St. Louis Police Officers

As discussed above, plaintiff has failed to present facts supporting the proposition that defendants falsely arrested him, illegally searched his vehicle, or violated his rights by failing to advise him of the *Miranda* safeguards. In addition, plaintiff's conclusory pleading is insufficient to raise his right to relief above the speculative level. For all these reasons, even if the law enforcement defendants were sued in their individual capacities, the claims against them must be dismissed.

### ii.   Judges

Plaintiff has named four Missouri circuit court judges as defendants: Hogan, Millikan, Whyte, and Botchway. He also refers to an unidentified judge who presided over a bond hearing. These claims are subject to dismissal because the judges are immune from suit. Even if they were not immune, plaintiff has failed to demonstrate each judge's personal responsibility for violating his constitutional rights.

### a.   Judicial Immunity

In order to allow a judicial officer to exercise the authority in which he or she is vested, and to be free to act upon their own conviction, judicial immunity provides a judge with immunity from suit. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his

36

immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.*, 931 F.3d 753, 760 (8th Cir. 2019).

A judge's immunity from 42 U.S.C. § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). *See also Justice Network, Inc.*, 931 F.3d at 760 (stating "that to determine whether an act is judicial, courts look to the particular act's relation to the general function normally performed by a judge").

Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Duty*, 42 F.3d at 462. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. In the context of judicial immunity, however, the scope of the judge's jurisdiction is construed broadly. *Justice Network, Inc.*, 931 F.3d at 762. "[A]n action – taken in the very aid of the judge's jurisdiction over a matter before him – cannot be said to have been taken in the absence of jurisdiction." *Mireles*, 502 U.S. at 13.

With regard to the judges, plaintiff alleges that his rights were not read, that his detention is illegal, that he has not been allowed to do depositions, that he has been denied his right to cross examine witnesses, that he has not been allowed to proceed pro se, and that he has been ordered to remain on ankle monitor while his case is pending. All these allegations implicate judicial decisions, and none of them are purported to have been taken in the absence of jurisdiction.

Plaintiff is obviously aware that judicial immunity typically bars suit against judges. To that end, he spends a good deal of time arguing that immunity does not exist in this case. As noted

above, there are two exceptions to absolute judicial immunity: when a judge takes a non-judicial action, and when a judge acts in the complete absence of jurisdiction.

There is no indication that any of the judges undertook a non-judicial action in plaintiff's case. Instead, plaintiff contends that they acted in the absence of jurisdiction. Specifically, he alleges that – by his own calculations – his speedy trial clock has run, and that he has not been tried within the requisite number of judicial terms. Plaintiff appears to assert that since those deadlines have passed, the circuit court automatically loses its jurisdiction, and the judges involved lose their immunity.

This argument is unpersuasive. Review of plaintiff's criminal case indicates that he has brought the matter of discharge on these grounds before the court, where they have been denied. Plaintiff obviously objects to the judges' refusal to accept his position as to the speedy trial calculation or whether his case should be discharged due to the end of the judicial term. Nonetheless, judicial immunity protects a judge in making this decision, even if it is erroneous, malicious, or made in bad faith. In other words, a judge does not lose jurisdiction – and therefore his or her immunity – simply because plaintiff disagrees with one of the judge's determinations.

### b.  Failure to Demonstrate Personal Responsibility

Even assuming judicial immunity does not apply, plaintiff's claims against the judges fails to assert their personal responsibility. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141,

1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has made no effort to connect each individual judge with the violation of one of his constitutional rights. Instead, he merely lists the names of the judges, treating them as one undifferentiated group, and then beneath that list, asserts a series of fragmentary and conclusory statements. This is entirely insufficient to demonstrate the requisite causal connection, as he has alleged no facts linking the individual judges with the challenged actions. For example, at no point does plaintiff connect an individual judge with an allegedly unconstitutional decision or ruling. In other words, there is no indication as to what each judge actually did or did not do to harm him. Thus, plaintiff has failed to state a 42 U.S.C. § 1983 claim against the judges in his state criminal case.

### c.   Dismissal of Claims Against Judges

As discussed above, the judges that plaintiff has named as defendants are protected from suit by judicial immunity, as there is no indication that they took non-judicial actions or acted in the complete absence of jurisdiction. Immunity aside, plaintiff's claims against the judges fail because he has not established each individual judge's personal responsibility for violating his constitutional rights. That is, he never connects a single judge's own actions with a constitutional violation. For all these reasons, even if the judges were sued in their individual capacities, the claims against them must be dismissed.

### iii.　　Prosecutors

Plaintiff has named three prosecutors as defendants in this case: Kim Gardner; Unknown Stroescu; and Alexander Polta. He also mentions an unidentified prosecutor who appeared at a bond hearing, apparently at the time he was released from custody and placed on ankle monitoring. Similar to the judges, the claims against the prosecutors are subject to dismissal based on immunity. Moreover, plaintiff has failed to demonstrate any prosecutor's personal responsibility for a constitutional violation.

### a.　Prosecutorial Immunity

Prosecutors are immune from 42 U.S.C. § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the state in a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

Prosecutorial immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Sample*, 836 F.3d at 916. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8ᵗʰ Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8ᵗʰ Cir. 2013). *See also Woodworth*, 891 F.3d at 1089 (explaining "that a prosecutor is immune from suit even if he knowingly presented false, misleading, or perjured testimony or withheld or suppressed exculpatory evidence").

Here, even with plaintiff's conclusory style of pleading, it appears that the prosecutors involved in this case were acting as advocates for the state. For example, plaintiff complains – though he does not explain why – about the prosecutor who attended his bond hearing. An appearance at a bond hearing is clearly conduct "associated with the judicial phase of the criminal process." To be sure, plaintiff argues that the prosecutors should receive only qualified immunity, but he does not support this position. Certainly, he presents no facts alleging that the prosecutors in this case were acting in an investigatory or administrative capacity. Therefore, the prosecutors in this case are immune from suit.

### b.  Failure to Demonstrate Personal Responsibility

Even if immunity is not available, plaintiff has not stated a claim against the prosecutors because he has not established their personal responsibility. As noted above, liability in a 42 U.S.C. § 1983 case is personal. *Frederick*, 873 F.3d at 646. In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M.*, 808 F.3d at 340. As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442

41

F.3d at 1132. *See also Kohl*, 5 F.3d at 1149 (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan*, 916 F.3d at 717.

As with the other defendants, plaintiff does not even attempt to link each individual with an unconstitutional act. Instead, he lists the names of the prosecutors, and below that list, he presents a series of legal conclusions, such as "illegal seizure," "ankle monitor liberty deprivation," and "procedural due process." None of these conclusions is supported or explained by any factual allegations. More to the point, plaintiff has not established what each individual prosecutor did or did not do in violation of the constitution. Rather than demonstrate each person's own responsibility, he treats all the prosecutors as an undifferentiated group. In short, plaintiff has not established any causal links, he has not shown each prosecutor's direct responsibility, and he has not shown that he was deprived of his rights. Thus, leaving immunity aside, he has failed to state a 42 U.S.C. § 1983 claim against the prosecutors.

### c.  Dismissal of Claims Against Prosecutors

As discussed above, the prosecutors in this case are immune from suit, because plaintiff has failed to demonstrate that they took any actions outside of their role as an advocate for the state in a criminal prosecution. Regardless of immunity, plaintiff has failed to state a claim against the individual prosecutors, as he has established no causal connection between any defendant and a violation of his constitutional rights. For all these reasons, even if the prosecutors were sued in their individual capacities, the claims against them must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 9th day of  May, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE